UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) |
| Plaintiff | ) ) |
| vs. | ) CAUSE NO. 1:12-CV-351 RLM ) |
| JOHN HOLDERMAN, et al., | ) ) |
| Defendants | ) |

OPINION and ORDER

This cause is before the court on the motion of State Farm Fire & Casualty Company for summary judgment on its claims against John Holderman and the Estate of Timothy Robrock[1]. State Farm seeks a declaration from the court that the insurance policy State Farm issued to John Holderman doesn't cover the claims against Mr. Holderman pending in the Allen County Superior Court as Sandra Robrock, Personal Representative of the Estate of Timothy Robrock v. John Holderman, et al. (Cause No. 02D01-1012-CT-547). State Farm also has moved to strike a portion of Mr. Holderman's response brief pursuant to Federal Rule of Civil Procedure 12(f) and Rule 56-1(e) of the Local Rules of the United States District Court for the Northern District of Indiana. The court heard the parties' oral arguments on February 24, 2014. Based on a review of the parties'

---

[1] The Estate of Timothy Robrock is unrepresented in this action and no answer has been filed; a default was entered against the estate on September 12, 2013.

submissions and arguments, the court concludes that the motions must be granted.

FACTS

The parties don't dispute the basic facts. Mr. Holderman is a journeyman electrician: he's worked as an electrician since 1983, he's held a Journeyman Electrical License since 1987, he owned his own electrical business in Fort Wayne from 1990 to 1998, and before and after that time he worked as a journeyman electrician for other companies. In 2009, Mr. Holderman became employed as a journeyman electrician with Henry Electric: the company provided him with the tools he needed (although Mr. Holderman also owns many of his own electrician's tools), he drives a van displaying a "Henry Electric" insignia, and he can purchase supplies on a Henry Electric account at supply stores in the Fort Wayne area. Mr. Holderman says that most, if not all, of his work at Henry Electric has been performed for commercial clients.

In March 2009, Mr. Holderman agreed, at the request of his friend Andrew Glancy, to perform electrical work for Andrew's father, Perry Glancy, at a rental house the elder Mr. Glancy owned. Mr. Holderman quoted a price of $300 for the materials and labor, and Perry Glancy agreed. The next month, Mr. Holderman picked up the necessary materials and installed electrical wiring at the rental house so the tenants could use an air compressor in the garage. When the electrical work was done, Mr. Glancy gave Mr. Holderman a check for $300. Mr.

Holderman says the work he did for Perry Glancy amounted to a side job that he did as a favor to the Glancys under an informal, unwritten agreement between the parties.

In June 2010, Timothy Robrock was a guest of the Glancy tenants; Mr. Robrock was fatally electrocuted while working in the garage at that residence. Sandra Robrock, personal representative of Timothy Robrock's estate, sued Mr. Holderman and the Glancy tenants in the Allen County Superior Court, alleging that Mr. Holderman negligently installed the faulty electrical wiring that caused or contributed to Mr. Robrock's death, and that the Glancy tenants negligently failed to warn Mr. Robrock of the faulty wiring.

Mr. Holderman sought a defense from State Farm Fire & Casualty Company under a homeowner's policy State Farm issued to him with effective dates of January 21, 2010 through January 21, 2011. State Farm is defending Mr. Holderman in the state court action under a reservation of rights through defense counsel.

In October 2012, State Farm filed this suit seeking a declaration that the homeowner's policy issued to Mr. Holderman doesn't provide liability or medical payment coverage for Sandra Robrock's claims against him. State Farm has moved for summary judgment based on its argument that the claims in the Allen County action arose out of Mr. Holderman's business pursuits, so State Farm has no duty to defend or indemnify him in that action. Mr. Holderman maintains material questions of fact exist as to whether "doing a favor for a friend is []

transformed into a 'business pursuit' simply because the work might otherwise fall within an area in which the insured is otherwise technically proficient." Resp., at 4. Mr. Holderman answers that question in the negative, and State Farm disagrees. The motions are ripe for review.

MOTION TO STRIKE

State Farm has moved to strike paragraph 1 of Mr. Holderman's Statement of Genuine Disputes contained in his summary judgment response. In that paragraph, Mr. Holderman disputes State Farm's claim that neither Andrew Glancy nor Perry Glancy received any bids or estimates for the work Perry Glancy wanted done at his rental property. State Farm says Mr. Holderman's statement that Andrew Glancy received two bids before Mr. Holderman agreed to do the work is inadmissible hearsay: Mr. Holderman was only repeating what Andrew Glancy allegedly told him, and Mr. Holderman had no personal knowledge of whether the Glancys did, in fact, receive any bid(s) or estimate(s) for the electrical work. Thus, State Farm says, Mr. Holderman's assertion in paragraph 1 is inadmissible under Rule 802 of the Federal Rules of Evidence. Mr. Holderman hasn't responded to State Farm's argument.

The record contains Mr. Holderman's deposition testimony that Andrew Glancy told him that he (Andrew Glancy) got a couple of quotes for the work to be done at his father's rental property and those charges were more than the Glancys wanted to pay. Pltf. Exh. 1 (Holderman Dep.), pp. 39, 52. The record also contains

Andrew Glancy's affidavit statement that he didn't receive any bids or estimates for the work to be done at his father's rental property, Pltf. Exh. 5, ¶ 5, and Perry Glancy's deposition statement that he didn't remember getting any estimates for that work, other than a quote of $300 from John Holderman. Pltf. Exh. 4 (P. Glancy Dep.), pp. 9, 12.

If offered to prove the truth of what Andrew Glancy is said to have stated — that bids were obtained — it is hearsay within the meaning of Federal Rule of Evidence 801 and presumptively barred by Rule 802. It might be admissible at trial as a prior inconsistent statement, but impeachment rarely finds a seat at the summary judgment table. Still, whether Andrew or Perry Glancy sought or received other estimates before Andrew asked Mr. Holderman to do the work at his father's rental property isn't material to the issue before the court — whether State Farm has a duty to defend or indemnify Mr. Holderman in the state court action. Therefore, the motion will be denied as unnecessary.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255. The existence of an alleged factual dispute, by itself, will not defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." Hastings Mut. Ins. Co. v. LaFollette, No. 1:07-cv-1085, 2009 WL 348769, at *2 (S.D. Ind. Feb. 6, 2009); *see also* Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) ("summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" *(quoting* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

POLICY PROVISIONS

The State Farm Homeowners Policy issued to John Holderman provides in Section II, entitled Liability Coverages, as follows:

6

Coverage L – Personal Liability

      If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

Compl., Exh. A, p. 15.

The policy also provides in the Exclusion portion of Section II that

1. Coverage L . . . [does] not apply to:
                \*     \*     \*
b. bodily injury or property damage arising out of business pursuits of any insured . . . . This exclusion does not apply:
    (1)    to activities which are ordinarily incident to non-business pursuits . . . .

Compl., Exh. A, p. 16.

The policy defines the term "business" as "a trade, profession, or occupation," Compl., Exh. A, p. 1, and the term "occurrence" as "an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period." Compl., Exh. A, p. 2.

7

DISCUSSION

Neither party has indicated which state law might govern the insurance policy at issue, but State Farm's complaint is based on diversity jurisdiction and the parties rely on Indiana law to support their summary judgment arguments, so the court looks to Indiana law. Camp v. TNT Logistics Corp., 553 F.3d 502, 505 (7th Cir. 2009) ("Because none of the parties raised the choice of law issue, [the court] appl[ies] the substantive law of . . . the forum state.").

In Indiana, insurance policies are governed by the same rules of construction as other contracts. Westfield Ins. Co. v. Hill, 790 F. Supp. 2d 855, 860 (N.D. Ind. 2011); Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009). A court's goal in interpreting an insurance contract is to "ascertain and enforce the parties' intent as manifested in the insurance contract. [The court] construe[s] the insurance policy as a whole and consider[s] all of the provisions of the contract and not just the individual words, phrases or paragraphs. If the language is clear and unambiguous, [the court] give[s] the language its plain and ordinary meaning." Argonaut Ins. Co. v. Jones, 953 N.E.2d 608, 615 (Ind. Ct. App. 2011) (*quoting* Buckeye State Mut. Ins. Co. v. Carfield, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009)). "Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, courts construe insurance policies strictly against the insurer. . . . This is particularly the case where a policy excludes coverage." American Family Mut. Ins. Co. v. Bower, 752 F. Supp. 2d 957, 961-962 (N.D. Ind. 2010). Ambiguity doesn't exist just because the parties

8

disagree about the meaning of a provision or proffer differing interpretations of the policy language. Westfield Ins. Co. v. Hill, 790 F. Supp. 2d 855, 860 (N.D. Ind. 2011); Buckeye State Mut. Ins. Co. v. Carfield, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). "Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment." State Auto. Mut. Ins. Co. v. Flexdar, Inc., 964 N.E.2d 845, 848 (Ind. 2012).

State Farm first says the policy's relevant language is clear: the policy excludes coverage for damages arising from the business pursuits of the insured and defines the term "business" as a person's trade, profession, or occupation. Mr. Holderman says in response that Indiana law gives effect to an exclusion in an insurance contract only if the exclusion clearly and unmistakably brings within the contract's scope the particular act or omission that will effectuate the provision, and notes that any ambiguities must be construed against the insurer and in favor of the insured, citing Asbury v. Indiana Union Mut. Ins. Co., 441 N.E.2d 232, 236 (Ind. Ct. App. 1982). Mr. Holderman also points to language in Freeman v. Commonwealth Life Ins. Co. of Louisville, 271 N.E.2d 177 (Ind. Ct. App. 1971), that insurance contracts must be construed to prevent the defeat of the insured's indemnification for a loss when the general language of the contract is susceptible to two equally fair constructions. 271 N.E.2d at 181 n.6. Mr. Holderman, however, hasn't challenged the terms of the insurance policy or pointed to any ambiguities in the contract, so the court will give the policy language "'its plain and ordinary meaning.'" LDT Keller Farms, LLC v. Brigitte

9

Holmes Livestock Co., Inc., 722 F. Supp. 2d 1015, 1021 (N.D. Ind. 2010) (*quoting* Barclay v. State Auto Ins. Cos., 816 N.E.2d 973, 975 (Ind. Ct. App. 2004)).

The parties' dispute relates to their differing interpretations of the phrase "business pursuit" in the Exclusion portion of the policy. While the policy doesn't define that phrase, "[w]hen interpreting insurance documents under Indiana law, 'an insured is engaged in a business pursuit only when he pursues a continued or regular activity for the purpose of earning a livelihood.'" Doaks v. Safeco Ins. Co. of America, No. 3:09-CV-367, 2013 WL 951202, at *3 (N.D. Ind. Mar. 12, 2013) (*quoting* American Family Mut. Ins. Co. v. Bentley, 352 N.E.2d 860, 865 (Ind. Ct. App. 1976)); *see also* Frankenmuth Mut. Ins. Co. v. Williams, 690 N.E.2d 675, 680 (Ind. 1997) (reiterating that an insured is engaged in a business pursuit only when he pursues a continued or regular activity for the purpose of earning a livelihood). Thus, the court must determine whether Mr. Holderman pursued a continued or regular activity and whether the purpose of the activity was earning a livelihood. Doaks v. Safeco Ins. Co. of America, No. 3:09-CV-367, 2013 WL 951202, at *3 (N.D. Ind. Mar. 12, 2013).

*1. Continuity*

Mr. Holderman testified that his employment with Henry Electric generally involves commercial work. He testified, too, that he is occasionally required to perform service work, which involves rewiring existing structures, reading and interpreting wiring diagrams and blueprints, running wire, setting up breaker and

panel boxes, installing fixtures and lights, and installing ground rods. Holderman Dep., at 37. Mr. Holderman testified that the work he did at the Glancy property required him to take an amperage and voltage reading for an air compressor, perform calculations using the code book, install a breaker and panel box in the basement of the house, run wires up from the basement and from the house to the garage, and install a pullout disconnect, non-fusible, by the back door of the garage. Holderman Dep., at 43-44. Mr. Holderman performed the work at the Glancy property without assistance from anyone else.

Mr. Holderman argues that the single, isolated "favor" he reluctantly did for his friend's father isn't transformed into a "business pursuit" merely because the favor may have been requested because of his competency. The court can't agree: the focus of this analysis is Mr. Holderman's activity of doing electrical work, not his activity of doing a favor. The undisputed facts establish that (i) Mr. Holderman is a licensed electrician who has been working as a journeyman electrician for over twenty years; (ii) Mr. Holderman was contacted by Andrew Glancy to do electrical work based on Mr. Holderman's status as a licensed electrician and because the price Mr. Holderman quoted for the work seemed reasonable to the Glancys; (iii) Mr. Holderman personally determined the scope of the work to be performed and purchased all the necessary materials; (iv) he drove to the job site in the Henry Electric van he uses during his employment with Henry Electric; (vi) he performed tasks involved in his trade, profession, or occupation, *i.e.*, installing electrical wiring and related hardware using skills and tools of a journeyman electrician;

11

and (vii) after undertaking the work for Mr. Glancy, Mr. Holderman continued to be employed as a journeyman electrician. Those facts allow no finding other than that Mr. Holderman engaged in regular or continued activity – working as an electrician – satisfying the first part of the test.

*2. Earning a Livelihood*

Under the second prong of the test (whether Mr. Holderman engaged in activity to earn a livelihood) the court initially considers whether Mr. Holderman was gainfully employed elsewhere and then considers the significance to Mr. Holderman of the income he received. Mr. Holderman's main source of income is derived from his employment with Henry Electric, where he works as a journeyman electrician at a rate of $21 per hour. Holderman Dep., at 34.

Mr. Holderman received additional income from Perry Glancy for installing electrical wiring and related hardware using skills and tools of a journeyman electrician; Mr. Holderman charged Mr. Glancy $190 for the materials he purchased, $10 for the gas he used, and $100 for his labor based on a rate of $20 per hour. Mr. Holderman maintains the amount he received for his labor wasn't significant; in fact, he says, whether the money he received for his labor was fair compensation is open to debate.

The $20 hourly rate Mr. Holderman charged Mr. Glancy for the work he performed was almost the same as the hourly rate he was paid by Henry Electric, $21 per hour. While $100 might not represent a lot of money, that Mr. Holderman

12

charged for his labor at about his regular rate of pay indicates that he sought some monetary gain. Mr. Holderman might have viewed the work he did for Mr. Glancy to be a "favor," but the record compels a finding that he also believed he deserved to be compensated for that favor at a rate comparable to what he normally received for his work as a journeyman electrician, satisfying the second prong of the test.

Viewing the record in the light most favorable to Mr. Holderman, the court concludes that he hasn't carried his burden of establishing a genuine issue of material fact to defeat summary judgment. Mr. Holderman's work for Perry Glancy might have involved a much smaller time commitment and pecuniary gain than his regular employment with Henry Electric, but his installation of electrical service for Mr. Glancy was undertaken using his journeyman electrician's skills and pay grade and so constituted a continuous or regular business activity undertaken for monetary gain. The court concludes that State Farm's summary judgment motion must be granted.

CONCLUSION

For the reasons discussed above, the court

(1) DENIES the plaintiff's motion to strike [docket # 27]; and

(2) GRANTS the plaintiff's summary judgment motion [docket # 29].

The Clerk is DIRECTED to enter a declaratory judgment that State Farm Fire & Casualty Insurance Company owes no duty to John Holderman to defend or indemnify him with respect to any claims by the Estate of Timothy Robrock pending in the Allen County Superior Court as Cause No. 02D01-1012-CT-547.

SO ORDERED.

ENTERED:   February 27, 2014

/s/ Robert L. Miller, Jr.
Judge, United States District Court